STANLEY AND EDITH MARLIN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3817–69SC.   Filed March 23, 1970.

---

Stanley Marlin, pro se.
*Marvin A. Fein*, for the respondent.

OPINION

The expenditures for travel incurred by petitioners are deductible under section 162(a) if they constitute ordinary and necessary business expenses. Section 1.162–5, Income Tax Regs., governing the deductibility of a taxpayer's educational expenditures which were in force during the year 1966 were promulgated by T.D. 6291, filed April 3, 1958. In 1967, respondent revised section 1.162–5. See T.D. 6918, filed May 1, 1967. The new regulations are effective for taxable years beginning on or after January 1, 1968, but for prior years taxpayers may rely alternatively on either the 1958 or the 1967 regulations. Rev. Rul. 68–191, 1968–1 C.B. 67. *Burke W. Bradley, Jr.*, 54 T.C. 216 (1970); *Ronald F. Weiszmann*, 52 T.C. 1106, 1108 (1969); *James A. Carroll*, 51 T.C. 213, 219 (1968), affd. 418 F. 2d 91 (C.A. 7, 1969).

The 1958 regulations provided, in pertinent part, as follows:

Sec. 1.162–5 Expenses for education.

(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:

(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or

(2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment.

Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. * * *

\* \* \* \* \* \* \*

(c) In general, a taxpayer's expenditures for travel (including travel while on sabbatical leave) as a form of education shall be considered as primarily personal in nature and therefore not deductible.

(d) If a taxpayer travels away from home primarily to obtain education the expenses of which are deductible under this section, his expenditures for travel, meals, and lodging while away from home are deductible. However, if as an incident of such trip the taxpayer engages in some personal activity such as sightseeing, social visiting or entertaining, or other recreation, the portion of the expenses attributable to such personal activity constitutes nondeductible personal or living expenses and is not allowable as a deduction. If the taxpayer's travel away from home is primarily personal, the taxpayer's expenditures for travel, meals, and lodging (other than meals and lodging during the time spent in participating in deductible educational pursuits) are not deductible. Whether

a particular trip is primarily personal or primarily to obtain education the expenses of which are deductible under this section depends upon all the facts and circumstances of each case. An important factor to be taken into consideration in making the determination is the relative amount of time devoted to personal activity as compared with the time devoted to educational pursuits. Expenses in the nature of commuters' fares are not deductible.

Paragraph (c) of section 1.162–5, Income Tax Regs. (1958), recognizes that travel may be educational but, as a general rule, the deductibility of such expenses is nevertheless denied. The Internal Revenue Service, however, in Rev. Rul. 64–176, 1964–1 C.B. (Part 1) 87, adopts a more liberal rule with respect to *travel by teachers on sabbatical leave*. That ruling expressly makes section 1.162–5(c) inapplicable to such travel "to the extent that * * * [it] meets the tests for deductibility of educational expenses prescribed in sections 1.162–5(a) and (d)." Although Rev. Rul. 64–176 pertains only to sabbatical leave travel, its rationale has been extended to include *all educational travel* by teachers. *Cross* v. *United States*, 250 F. Supp. 609, 613 (S.D. N.Y. 1966), on remand from 336 F. 2d 431 (C.A. 2, 1964), which had reversed 222 F. Supp. 157 (S.D. N.Y. 1963).[2] It appears to us that section 1.162–5(c) has been administratively and judicially rescinded with respect to educational travel by teachers.

The deductibility of educational travel expenses under the 1958 regulations generally depends on whether or not the travel was undertaken *primarily* to maintain or improve skills required of the taxpayer in his employment. In other words, the taxpayer, to satisfy the requirements of the 1958 version of the regulations, must establish (1) that the primary purpose of the travel was to maintain or improve required skills, and (2) that the travel was of such a nature as to maintain or improve such skills.

Section 1.162–5 of the 1967 regulations, pertaining to travel as a form of education, provides:

(d) *Travel as a form of education.* Subject to the provisions of paragraph (b) and (e) of this section, expenditures for travel (including travel while on sabbatical leave) as a form of education are deductible only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment or other trade or business. For this purpose, a period of travel shall be considered directly related to the duties of an individual in his employment or other trade or business only if the major portion of the activities during such period is of a nature which directly maintains or improves skills required by the individual in such employment or other trade or business. The approval of a travel program by an employer or the fact

---

[2] See also *Sid Neschis*, T. C. Memo. 1963–191; *Alan Thomas James*, T. C. Memo. 1964–49; *Helen V. Oehlke*, T. C. Memo. 1967–144; *Gladys M. Smith*, T. C. Memo. 1967–246.

that travel is accepted by an employer in the fulfillment of its requirements for retention of rate of compensation, status or employment, is not determinative that the required relationship exists between the travel involved and the duties of the individual in his particular position.

(e) *Travel away from home.* (1) * * * The rules set forth in this paragraph are subject to the provisions of section 162(a)(2), relating to deductibility of certain traveling expenses, and section 274(c) and (d), relating to allocation of certain foreign travel expenses and substantiation required, respectively, and the regulations thereunder.

It is clear from its language that section 1.162–5(d) of the new regulations does nothing more than adopt substantially the same judicially developed test that was applied under the old regulations but *without the primary purpose requirement.* Respondent's counsel, relying on *Leo J. Roy,* T. C. Memo. 1969–115, seems to argue that the primary-purpose requirement is still applicable under the new regulations. Although the *Roy* case was decided in 1969, the taxpayers therein elected to base their claim for deduction on the regulations in force in 1964, i.e., the 1958 regulations. Those regulations required the taxpayer to establish that the primary purpose of the travel was to maintain or improve his skills. This is not the situation under the objective test of the new regulations since primary purpose is no longer germane. For this reason we think respondent's reliance on *Leo J. Roy, supra,* and *Cross* v. *United States, supra,* is misplaced. Section 1.162–5(d), Income Tax Regs. (1967), removes the subjective requirement of primary purpose, which was often difficult to establish, and, consequently, is more favorable to taxpayers claiming deductions for educational travel expenses than the old regulations. Accordingly, in fairness to petitioners, we apply the new regulations in this case.[3]

The deductibility of petitioners' travel expenses herein turns on the factual question of whether or not the major portion of the activities which they engaged in during the travel was of such a nature as to directly maintain or improve skills required by each of them in their employment. Sec. 1.162–5(d), Income Tax Regs. (1967). Because of the difference in the nature of the skills required of Stanley as a Latin teacher and those required of Edith as a world history teacher, we consider their respective claims for deductions separately.

1. *Educational Travel Expenses of Stanley Marlin.*—Stanley contends that his travel to France maintained or improved his skills as a *Latin* teacher. More specifically, he argues (1) that he was required in his Latin course to provide instruction pertaining to the develop-

---

[3] If petitioners fail to satisfy the test for deductibility under the new regulations, *a fortiori,* they fail under the old regulations.

ment of Roman culture and the expansion of the Roman Empire, (2) that he visited Roman archeological excavations during his travel in France, and (3) that this activity, inspecting at first hand what the Romans left in France, maintained or improved skills required in his employment.

Respondent, on the other hand, contends (1) that Stanley's travel expenditures were primarily personal and therefore nondeductible within the rationale of *Leo J. Roy, supra*, and *Cross* v. *United States, supra;* or (2) that Stanley has failed to prove the requisite relationship between the travel and his skills as a Latin teacher.

Respondent's first contention can be summarily rejected because it is based on the 1958 version of section 1.162–5. His second contention, however, is well taken.

The primary skill required of Stanley in his employment as a Latin teacher is the ability to teach the vocabulary, grammar, and syntax of the language. Instruction with respect to the expansion of the Roman Empire was only incidental to instruction of the language. In our opinion Stanley has not shown that "*the major portion* of the activities" during his travel in France was of "such a nature which *directly* maintains or improves skills" required in his employment. Indeed, his own testimony reveals that only a minor portion, if any, of such activities had any bearing on his skills as a Latin teacher. Even though Stanley in his memorandum brief states that "the trip was planned to view specific Roman archeological excavations including Vaison-la-Romaine, Glanum, Vienne, as well as the Roman cities of Nimes, Arles, St. Remy, Orange, Lutece (Paris) and more," there is simply no evidence in the record to show that he visited any of these places and towns other than the amphitheater at Paris and the aqueducts at Vaison-la-Romaine. It is quite clear from the testimony of petitioners that the major portion of their activities during their French tour was directly and proximately related to the skills of Edith, the history teacher, and not to those of Stanley, the Latin teacher.

At best, only a tenuous relationship exists between the activity of visiting sites and architectural ruins of the ancient Roman Empire *in France* and the skill required of a Latin teacher. We think such activity is not of the nature which *directly* maintains or improves skills required of such a teacher within the purview of the regulation.

We hold that Stanley has failed to prove that he is entitled to deduct as ordinary and necessary expenses those travel expenses attributable to him.

2. *Educational Travel Expenses of Edith Marlin.*—Edith contends that the activities of visiting and studying the abbeys, chateaus,

cathedrals, palaces, museums, and other places of historical interest were of such a nature as to directly maintain and improve her skills as a history teacher. We agree.

Respondent again chooses to rely on the primary-purpose requirement of the old regulations and the *Leo J. Roy* case as authority for the disallowance of Edith's travel expenses. Such authorities have no application for the reasons we have already stated.

The fact that Edith collected a large number of slides and other teaching aids during her travel tends to demonstrate the substantial connection between such travel and the maintenance and improvement of her skills as a history teacher. She has subsequently used these materials extensively in her classroom instruction. For many years Edith has taught gifted or honor students; she was concerned about presenting the material in such a way as to challenge or stimulate such advanced students. The knowledge and insight gained from seeing places of historical interest such as the Court of Versailles, the Bastille, the Louvre, and the many other cathedrals, abbeys, and monasteries maintained or improved her skill in this respect. During the tour of France, she derived personal familiarity with many places that had an important part in the history, art, and architecture of France and, in turn, Western civilization. No doubt this familiarity enabled her to present her course material to her students with added meaningfulness. We find convincing Edith's testimony that her travel in France improved her caliber of instruction and that it made her a better teacher.

It is significant, we think, that petitioners planned their itinerary to include primarily those places of professional interest to Edith's courses of instruction. The relationship between the major portion of the activities engaged in by petitioners during their travel and those skills required of Edith as a history teacher is clear and direct. It is also significant that petitioners were not members of any commercial tour, but traveled by themselves. This allowed them to go only to those places of particular interest to them and stay as long as they wanted at any one place.

Since the entire period of travel in France was directly related to Edith's duties as a history teacher, it follows that the travel was of such a nature which maintained or improved skills required in her particular teaching position within the purview of the statute and regulations. Accordingly, we hold that the expenditures attributable to Edith's travel are deductible as ordinary and necessary business expenses.

3. *Allocation of Educational Travel Expenses Attributable to Edith Marlin.*—On their 1966 joint Federal income tax return the petitioners claimed a total educational travel expense deduction of $2,311.11. The parties stipulated that petitioners incurred travel expenses of $1,807.50. At trial, petitioners claimed they had incurred expenses of $354 in excess of the amount ($1,807.50) stipulated. We are unable to sustain petitioners' claim that they incurred any travel expenses in excess of $1,807.50 because of their failure to comply with the substantiation requirements of section 274(d).[4]

We must now determine what portion of the total expenses are properly allocable to Edith and thus deductible. Revenue Ruling 56-168, 1956-1 C.B. 94, sets out the general rule governing the deductibility of expenses of taxpayers and members of their families in making business trips. It provides:

The amount deductible as an ordinary and necessary business expense on account of the transportation and lodging is the amount directly related to the business purpose of the trip, that is, the cost at the single rate for similar accommodations.

Reasoning by analogy, we conclude that the entire car rental and gasoline expenses of $392.50 are attributable to Edith. The amount of the car rental or gasoline was not increased because of Stanley's presence. The other expenses, consisting of the air transportation fares, lodging, meals, film, and traveler's checks totaling $1,415, should be allocated equally between Stanley and Edith. Therefore, petitioners are entitled to deduct $1,100 as an ordinary and necessary business expense.

*Decision will be entered under Rule 50.*

---

[4] SEC. 274(d). SUBSTANTIATION REQUIRED.—No deduction shall be allowed—
    (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),
    (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or
    (3) for any expense for gifts,
unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.