JOHN J. HILT and MARY K. HILT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hilt v. Commissioner
Docket No. 6243-80.
United States Tax Court
T.C. Memo 1981-672; 1981 Tax Ct. Memo LEXIS 71; 42 T.C.M. (CCH) 1718; T.C.M. (RIA) 81672; November 23, 1981. John J. Hilt and Mary K. Hilt, pro se. Alan C. Parsons, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1976 in the amount of $ 778. The issue *72 for decision is whether petitioners are entitled to a deduction as a business expense for any part of the amounts they expended in connection with a trip to Hawaii during the last two weeks of December 1976 and, if so, the amount of such deduction. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Santa Rosa, California, at the time of the filing of their petition in this case, filed a joint Federal income tax return for the calendar year 1976 with the Director, Internal Revenue Service Center, Fresno, California. Petitioner John J. Hilt has been a teacher since 1964 and from 1966 until 1980 taught the fifth or sixth grades. During the year here in issue and for some time prior thereto, Mr. Hilt was employed by the school system of Santa Rosa, California. During the year here in issue, Mr. Hilt had a permanent lifetime teaching certificate from the State of California. Petitioner Mary K. Hilt has been a teacher since 1963 and since 1966 has taught in the Santa Rosa City School District. She has taught first, second and third grades and various combinations of the first and second or second *73 and third grades. During the year here in issue, Mrs. Hilt had a permanent teaching certificate from the State of California. In teaching the fifth or sixth grades, Mr. Hilt spent approximately one-sixth of each day teaching mathematics, one-fifth of each day teaching reading, one-fifth teaching language arts such as spelling and writing, one-fifth teaching social studies, including history and geography, and the remainder of the day teaching physical education or music. In teaching the various subjects, Mr. Hilt would attempt to make references and tie in multicultural ideas with his teaching. Mrs. Hilt spent approximately two hours of each day in her second and third grade classes teaching reading and writing. She also taught mathematics, social studies, science, health, nutrition, art, language and spelling. In teaching these courses she bought in multicultural educational aspects. Under the laws of the State of California, teachers can increase their salary level by obtaining professional growth units up to a maximum level. The maximum number of units which may be obtained by a teacher in any one professional growth year is 15. In the fall of 1976 each of petitioners *74 enrolled in Graduate Course No. 650.002 at La Verne College entitled "World Travel and Academic Enrichment." The course permitted the earning of one to four units of growth credits. It called for a participant to submit a proposal for study-travel and to keep an academic log in which to list experiences and note possible application to the classroom situation. The course description also provided that the person participating in it should acquire for the classroom as much visual aid and instructional aid material as could reasonably be secured during his travels. It provided that one semester unit of graduate credit might be earned for each one week travel period in foreign study travel. Each participant was required to develop a proposal setting forth the personal and professional objectives for visiting countries in which travel was planned and to maintain a diary noting classroom application. Petitioners each submitted a proposal for study-travel as required by the college. Mrs. Hilt, in her proposal, stated that her main objectives were to provide her second grade students with new experiences involving the Hawaiian culture and that she planned to present a unit on Hawaii *75 as part of a multicultural approach to help students gain positive value of various cultures. She stated that she planned to observe Hawaiian culture from a multicultural and geographic point of view and to take slides, pictures and movies of her trip, as well as getting samples of coral, shells, tapa cloth, a hula skirt, leis, coconuts, pineapples and the like. She listed her itinerary as follows: My itinerary involves 5 days on the Island of Hawaii visiting points of interest such as the active volcano, Captain Cook's Monument, orchid gardens, Alaska Falls, lava flows and the Kona Coffee Plantation. Next I will spend four days on the Island of Kauai viewing tropical growth, the fern grotto forest, Waimea canyon and a rain forest. Finally I will spend two days on the Island of Oahu visiting the Capitol of the state, the PolynesianCultural Center, the University of Hawaii, Pearl Harbor and the Kahuku Sugar Mill. A more detailed list will be available in my log. Mr. Hilt, in his proposal, stated that his objective was to help students become more aware of the Polynesian culture. He stated that he would observe the Polynesian culture primarily form the sociological and historical *76 point of view. He listed his itinerary, which was the same as Mrs. Hilt's since they were traveling together. Neither petitioner was required by the Santa Rosa City School District to take the course, and neither petitioner was reimbursed for any part of the expenses of the course by the Santa Rosa City School District. Petitioners left for their trip to Hawaii on December 20, 1976, and returned on December 31, 1976. They were accompanied on the trip by their two children and, with few exceptions, the children accompanied them wherever they went during the trip. Each petitioner kept a diary of his or her trip. Listed in their diaries were the places they went and various activities they engaged in. They visited most of the normal tourist attractions in Hawaii, went swimming on the beaches, and took rides on the glass-bottom boats and a sunset boat trip. At all the places they visited they took slides and pictures; at some places they picked up shells. They also purchased coconuts, pineapples, a ukulele, Hawaiian dolls, and various records and children's books. While on the Island of Oahu, they visited the Polynesian cultural center, but Mr. Hilt made a note: "Visited briefly--not *77 enough time to see everything" and a further note: "Collected brochures and took pictures." Mr. Hilt had lived in Hawaii as a child and he took his wife and children to see the spot in Hawaii where he had lived. Petitioners did not visit classrooms while in Hawaii or any of the schools. The schools were closed for the Christmas vacation. Petitioners did not attend any seminars or discussion groups relating to teaching and did not discuss teaching methods with local teachers. Petitioners rented a car on each island they visited and drove to various places. The following schedule shows expenditures made by petitioners on their trip to Hawaii of which they kept a record: Tuition
$ 144.00
Miscellaneous expenses
421.00
Airfare
616.00
Meals
110.72
Lodging
338.00
Film
126.00
Car rental
227.00
Laundry
2.00
Total
$ 1,984.72
Included in the miscellaneous expenditures were at least $ 154 which they spent for books, records, and souvenirs which they could use in their classroom activities. Since taking the trip of Hwaii, Mr. Hilt has included in his curriculum every year a unit on Hawaii. This unit has been included during a two- to three-week period *78 and during this period he has tied in various aspects of the Hawaiian Islands to his language, mathematics, reading, social studies, art, and music classes. Each day during this three-week period all of these classes included some reference to the Hawaiian Islands. Since taking the trip to Hawaii Mrs. Hilt has brought in artifacts such as shells and corals and various types of jewelry and sand from the Black Sand Beach to discuss with her children at some time during the school year. Both petitioners have shown some of the pictures and slides they took in Hawaii to their classes during the school year. Each petitioner received two professional growth units for the trip to Hawaii. Petitioners, on their Federal income tax return for 1976, deducted $ 2,300 as educational expenses. Respondent in his notice of deficiency disallowed the claimed deduction with the explanation that petitioners had not established that these expenses were incurred primarily to maintain or improve skills required in their present employment or to meet the express requirements of their employers, or that they had expended the amount claimed for the purposes designated. [1]
*79 OPINION Section 1.162-5, Income Tax Regs., provides, with exceptions not here relevant, that expenditures made by an individual for education are deductible as ordinary and necessary business expenses if the education maintains or improves skills required by the individual in his employment, or meets the express requirements of the individual's employer. This record clearly shows that the travel to Hawaii undertaken by petitioners was not required by their employer. Therefore, in order for these amounts to be deductible, petitioners must show that the expenditures were made for education which maintained or improved the skills required in their employment as elementary school teachers. Section 1.162.5, Income Tax Regs., provides the requirements for expenditures for travel away from home to be deductible as educational expenses. [2] This regulation requires that if an individual travels away from home primarily to obtain education the expenditures for the travel, meals and lodging while away from home are deductible, but that if as an incidence of such trip the individual engages in personal activities such as sight-seeing, social visiting, entertaining or other recreation, the *80 portion of the expenses attributable to such personal activities are nondeductible personal living expenses. It further provides that if the individual's travel away from home is primarily personal, the expenditures for travel, meals and lodging are nondeductible. In order for such expenses to be deductible this regulation provides that the expenditures must be attributable to a period of travel that is directly related to the duties of the taxpayer in his employment and that a period of travel shall be considered directly related to the duties of the taxpayer's employment only if a major portion of the activities during the period of travel are of a nature which directly maintains or improves skills required by the taxpayer in such employment. It specifically provides that the approval of the travel program by an employer or the fact that the travel fulfills requirements for retention of rate of compensation or status is not determinative that the required relationship exists between the travel and the taxpayer's duties in his position. The regulation provides that an important factor to be taken into consideration in making the determination of whether a trip is primarily personal *81 or primarily to obtain education is the relative amount of time devoted to personal activities as compared with the time devoted to educational pursuits. *82 The record in this case shows that most of the time that petitioners spent in Hawaii, they were engaged in activities undertaken by any tourist. While petitioners did take pictures and acquire souvenirs which they planned to, and did, use in their classroom activities, they did not engage in any specific course of study or spend any time acquiring information from individuals specifically knowledgeable in the areas of Hawaiian culture or history. They spent time on the beaches and visiting the volcanoes on the Island of Hawaii, waterfalls, and the pineapple and coffee plantations. These are the same activities engaged in by many tourists. Petitioners were accompanied on the trip by their two children, ages 2 and almost 6-years-old. In petitioners' diary is a reference to their obtaining a baby-sitter for the children when they took an evening boat trip. Mr. Hilt had lived as a child in Hawaii and took his family to visit the place where he had lived. From a review of the diaries kept by petitioners, the inference is clear that most of petitioners' time while in Wahaii was devoted to the same kind of personal activities that any other visitor to Hawaii would engage in although *83 they did spend some time acquiring books, records, and pictures to bring back to use in their classrooms. Furthermore, the record shows that the primary skills required of petitioners were not the teaching of aspects of Hahaiian life or Hawaiian culture. This was an incidental part of the teaching petitioners did. Petitioners contend that since their travel was approved by the Santa Rosa School District and acceptable for professional growth credits they should be allowed the deduction. However, the regulations specifically provide that this fact is not determinative of the relationship of the travel to a taxpayer's employment. The primary skills required of each petitioner were the ability to teach young children reading, mathematics, spelling, language, social studies, physical education, art and music. Petitioners have not shown that the major portion of their activities in Hawaii was of such a nature as to directly maintain and improve the skills required for such teaching. See Marlin v. Commissioner, 54 T.C. 560, 565-566 (1970). [3] On the basis of this record, we conclude that petitioners have failed to show the direct relationship of the travel in Hawaii *84 to the improvement of their skills as elementary school teachers necessary to entitle them to a deduction for their travel expenses as educational expenses. Although petitioners did not specifically claim the expenditures they made for books and records and film for use in their classroom as a deduction apart from the claimed deduction of the total cost of their trip to Hawaii, in our view the record is sufficient to establish that the film which petitioners used in connection with the trip which cost $ 126 and the books and records and some of the souvenirs they acquired were for use in their classroom teaching and were primarily used in this manner. We have concluded from the record in this case that at least $ 154 of petitioners' miscellaneous expenditures are shown to be for children's books, records, and souvenirs which were purchased by petitioners to use in connection with their teaching activities. We therefore conclude that the amount of $ 280 spent by petitioners for pictures, slides, *85 and children's books and records was spent on material to be used in connection with their teaching program and they have used these materials since the time of the trip for this purpose. For that reason we conclude that petitioners are entitled to deduct the amount of $ 280 as a business expense for materials and supplies used in connection with their trade or business. Although petitioners did not specifically claim the expenditure for classroom aids except as a part of their total travel expenses, their testimony and the record as a whole show that they did intend to claim this amount as a deductible business expense. In our view, the issue with regard to the deductibility of the cost of these teaching materials was tried with the implied consent of the parties. See Rule 41(b), United States Tax Court Rules of Practice and Procedure. We therefore hold that petitioners are entitled to deduct the $ 280 they spent for pictures, slides, books, and similar items to be used in their classrooms as a business expense but are not entitled to deduct any other part of the expenses of their Hawaiian trip. Decision will be entered under Rule 155. Footnotes
1. At the trial petitioners produced certain records, and respondent now agrees that petitioners have established that they expended $ 1,984.72 on their trip to Hawaii. The amounts for which petitioners kept no record were claimed by petitioners to have been spent for food. They had not kept a record of all their food expenditures.↩
2. Sections 1.162.5(d) and (e), Income Tax Regs., provide as follows: (d) Travel as a form of education. Subject to the provisions of paragraph (b) and (e) of this section, expenditures for travel (including travel while on subbatical leave) as a form of education are deductible only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment or other trade or business. For this purpose, a period of travel shall be considered directly related to the duties of an individual in his employment or other trade or business only if the major portion of the activities during such period is of a nature which directly maintains or improves skills required by the individual in such employment or other trade or business. The approval of a travel program by an employer or the fact that travel is accepted by an employer in the fulfillment of its requirements for retention of rate of compensation, status or employment, is not determinative that the required relationship exists between the travel involved and the duties of the individual in his particular position. (e) Travel away from home. (1) If an individual travels away from home primarily to obtain education the expenses of which are deductible under this section, his expenditures for travel, meals, and lodging while away from home are deductible. However, if as an incident of such trip the individual engages in some personal activity such as sight-seeing, social visiting, or entertaining, or other recreation, the portion of the expenses attributable to such personal activity constitutes nondeductible personal or living expenses and is not allowable as a deduction. If the individual's travel away from home is primarily personal, the individual's expenditures for travel, meals and lodging (other than meals and lodging during the time spent in participating in deductible education pursuits) are not deductible. Whether a particular trip is primarily personal or primarily to obtain education the expenses of which are deductible under this section depends upon all the facts and circumstances of each case. An important factor to be taken into consideration in making the determination is the relative amount of time devoted to personal activity as compared with the time devoted to educational pursuits. The rules set forth in this paragraph are subject to the provisions of section 162(a)(2), relating to deductibility of certain traveling expenses, and section 274(c) and (d), relating to allocation of certain foreign travel expenses and substantiation required, respectively, and the regulations thereunder.↩
3. See also Ippolito v. Commissioner, T.C.Memo. 1978-56, filed Feb. 14, 1978; Schrimpf v. Commissioner, T.C.Memo. 1977-315↩, filed Sept. 19, 1977.